JOHN C. WYMAN & others *vs.* ESTHER H. ADAMS.

The question whether due diligence was used to make a demand on the maker of a promissory note, in order to charge the indorser, if there be conflicting evidence, is for the jury, under proper directions from the court as to what amounts to due diligence.

Infancy of the maker of a note does not excuse the want of a demand on him by the holder, in order to charge the indorser.

THIS was an action of contract against the indorser of the following promissory note : $200. Boston, January 1, 1851. Twelve months after date, I promise to pay to the order of Esther H. Adams, two hundred dollars, value received. Joseph B. Adams. Indorsed. Esther H. Adams. The defendant relied upon a want of demand and notice, sufficient to charge her as indorser.

At the trial in the court of common pleas, December term, 1852, before *Wells*, C. J., the plaintiffs called Prescott Bigelow, a notary public, who testified that on the day when said note matured, it was handed to him by a clerk of the plaintiffs, without any particular instructions ; he, not knowing the residence of said maker, went with said note to the Suffolk Bank in Boston, and there inquired for the residence of the maker, and if there were funds in said bank for the payment of said note, which being answered in the negative, he went with said note to the plaintiffs, and inquired of them where the maker of said note resided, and was informed that they did not know, but believed that he had absconded. Said notary thereupon inquired of one or two other persons for the residence of the maker, but could not ascertain the same, and he, thereupon, on the same day, left a written demand upon said maker, directed to him at Boston, in the Boston post-office, and sent notices in the proper form to the defendant, at Wayland and Sudbury, at the latter of which towns it was admitted the defendant resided. The plaintiffs here rested their case.

The defendant then called the maker of said note, the son of the defendant, who testified that said note was given and

indorsed to the plaintiffs, on the day of its date, at Cambridge, in the county of Middlesex, where the maker was confined on the claim for which this note was given, and he then informed Wyman, one of the plaintiffs, that his home was in Sudbury ; that he had been doing business in Charlestown, in said county, but was going home; that he went home to Sudbury after the giving of the note and stayed a short time; that he then returned to Charlestown, and stayed a short time; afterwards went to Boston and stayed a few weeks, engaged in peddling, during which time his place of business was on Tremont street ; during that time he bought a small bill of goods of the plaintiffs, but did not inform them where he was residing, and in October of 1851, he returned to Sudbury, where he had remained ever since; that he had talked of going to California during said period, but had never thought seriously of going, but whether he had so stated to the plaintiffs, he could not say. He further testified that at the date of said note, he was a minor, but became of age before said note became due.

Upon the foregoing evidence, the plaintiffs requested the court to rule, as a question of law, that the plaintiffs had used due and reasonable diligence to find the maker, for the purpose of making a demand, and were excused from making a demand upon the maker. But the facts being in controversy, the court refused so to rule, and submitted the question of reasonable diligence to the jury to be passed upon by them.

The plaintiffs further asked the court to rule that the maker of said note, being an infant when he made said note, and when the same was indorsed to the plaintiffs, which was known to the defendant, the plaintiffs were not bound to prove a demand and notice in order to entitle them to recovery. But the court refused so to rule, but ruled that the fact of the infancy of the maker, could not excuse the plaintiffs from making a demand and giving notice in order to charge the defendant. The jury found for the defendant. To the foregoing rulings, the plaintiffs excepted.

*C. R. Train*, for the plaintiffs. What is due and reasonable diligence on the part of the holder of a promissory note,

in making inquiries for the maker, in order to make a demand upon him, is a question of law for the court. *Tindal* v. *Brown*, 1 T. R. 167; *Bryden* v. *Bryden*, 11 Johns. 187; *Gray* v. *Bell*, 2 Rich. (S. C.) 67; *Chadwick* v. *Jeffers*, 1 Rich. (S. C.) 397; *Smedes* v. *Bank of Utica*, 20 Johns. 372; *Ransom* v. *Mack*, 2 Hill, (N. Y.) 595; *Thorn* v. *Rice*, 3 Shepl. 263; *Bank of Utica* v. *Bender*, 21 Wend. 643; *Remer* v. *Downer*, 23 Wend. 620; *Spencer* v. *Bank of Salina*, 3 Hill, 520. If the facts are in controversy, which is denied in the present case, the cause should be submitted to the jury, with instructions, that if they find certain facts proved, then the holder has or has not used due diligence. In the present case, the court submitted to the jury for them to find a question of law.

*G. A. Somerby*, for the defendant. 1. The court should be sustained in refusing to rule, as a matter of law, that the plaintiffs had used due and reasonable diligence, when the facts were in controversy. It then became a mixed question of law and fact. As matter of law, due diligence was not used. *Wheeler* v. *Field*, 6 Met. 290; 3 Kent Com. (7th ed.) 120, 133; *Gillespie* v. *Hannahan*, 4 McCord, 503; *Reid* v. *Morrison*, 2 W. & S. 401.

2. The note in this case was voidable only, and not void. If void, the plaintiffs could not recover at all. *Reed* v. *Batchelder*, 1 Met. 559; *Earle* v. *Reed*, 10 Met. 387.

3. Infancy is solely a personal privilege. *Nightingale* v. *Withington*, 15 Mass. 273; *Kendall* v. *Lawrence*, 22 Pick. 540; *Inhabitants of Worcester* v. *Eaton*, 13 Mass. 371.

SHAW, C. J. 1. The first prayer for instructions made by the plaintiffs was, when the evidence was in, to rule as a question of law, that the plaintiffs had used due and reasonable diligence to find the maker, for the purpose of making a demand on him, and were excused from any further demand. This the judge properly declined to do; there was conflicting evidence, and the judge could not decide the fact. It was a mixed question of law and fact, and it was for the jury to find whether due diligence had been used, under proper instructions in matter of law, as to what amounted to due and rea-

sonable diligence, and there is nothing to show that such proper directions were not given.

The learned counsel for the plaintiffs have cited the case of *Tindal* v. *Brown,* 1 T. R. 167, in support of the position, that whether, under given circumstances, the holder of a note has used due diligence to find and make demand on the promisor, is a question of law. The case cited we consider as of the highest authority, and, in a great measure, has settled the law governing the rights of holders, and the liabilities of indorsers of notes and bills of exchange. But the question decided by it was very different from the present.

The rule, no doubt, originally was, that, by the law merchant, demand must be made on the promisor and notice given to the indorser in reasonable time. But when all the parties lived near each other, and no death, absconding, change of residence or domicil, or other change had intervened, and there was nothing to prevent demand being made on the day the note became due, and notice given to the indorser, on that or the next day, to charge him on his conditional undertaking, the court held, that when all these existed, what was reasonable time was a question of law, and the court would instruct a jury authoritatively, that if such demand had been made on the promisor, and, on non-payment, such notice given to the indorser, the plaintiff would be entitled to their verdict; otherwise, and if these facts were not proved, he would not. Lord Mansfield said, " Certainty and diligence are of the utmost importance in mercantile transactions. What is reasonable notice is partly a question of fact and partly a question of law. It may depend in some measure on facts; such as distance, &c., the course of the post, &c. But wherever a rule can be laid down with respect to this reasonableness, that should be decided by the court, and adhered to by every one for the sake of certainty."

In the case then before the court, it was found that the parties lived within twenty minutes' walk of each other, and, of course, demand could be seasonably made, and notice of dishonor given, on the day of dishonor, or on the succeeding day. Still, under such authoritative instruction, the case must go

to the jury to return a verdict. This is the mode in which the court will regularly exercise its power to pass upon the question of reasonableness, as matter of law. And if the jury do return a verdict against such direction, in case like that mentioned, the court will set the verdict aside as against law and evidence. And in that very case of *Tindal* v. *Brown*, the cause again went to the jury, on nearly the same evidence, and the jury having again returned a verdict for the plaintiff, the court set it aside and ordered a third trial. On that trial, the jury returned a special verdict, on which the court rendered judgment for the defendant. This judgment was afterwards affirmed in the exchequer chamber.

This, we believe, has been ever since considered as settling the law definitively, that what is reasonable time for making demand on the promisor and giving notice of dishonor to the indorser, is a question of law. But this rule is practically carried into effect, by stating to the jury, what is reasonable time, in a case where the evidence is clear, certain, and uncontroverted, and by setting aside their verdict, if it is manifest that they decided against law, in not conforming the verdict to such instructions.

But where the promisor has no fixed place of abode, or where he has absconded or changed his residence, it is a very different question, what shall be considered due and reasonable diligence on the part of the holder, in searching or inquiring for the promisor, in order to make demand. There, in the language of Lord Mansfield, "no rule can be laid down;" it depends on a variety of circumstances, to be considered by the jury, under proper directions by the court as to the nature and degree of the diligence required.

2. In regard to the second point, that the promisor was an infant, the plaintiffs asked the court to rule that the maker being an infant, no demand on him was necessary, in order to charge the indorser.

We think the court ruled rightly in directing the jury, that the fact of the infancy of the maker could not excuse the plaintiffs. The very undertaking of the indorser is, that if the holder will demand the amount of the maker at the maturity

,of the note, and he does not pay it according to his promise, he, the indorser, will. In effect, the indorser warrants that it is a good note, and will be paid, and no disability will prevent it. In coming to this conclusion, we place no reliance on the position taken by the counsel for the defendant, that even if the note were void, instead of being voidable, the defendant, for that reason, would not have been liable as indorser. The cases cited by him to this point, *Reed* v. *Batchelder,* 1 Met. 559, and *Earle* v. *Reed,* 10 Met. 387, decide nothing as to the liability of an indorser, but only, that if void and not voidable, the maker would not be liable even on ratification. Even if the nominal maker were a fictitious person, or the note a forgery, the indorser guarantees its validity and goodness. But this note, in its inception, was voidable only, and the power to repudiate it is the personal privilege of the minor, but could not be taken advantage of by the indorser.                                   *Exceptions overruled*